IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2015 MAR 26 PM 3:08

CATALYST MEDIUM FOUR, INC.,
          Plaintiff,

-vs-                                              Case No. A-14-CA-1007-SS

CARDSHARK, LLC,
          Defendant.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant CardShark, LLC's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3) and, in the alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) [#10], Plaintiff Catalyst Medium Four, Inc.'s Response and Motion for Jurisdictional Discovery [#11], and CardShark LLC's Reply [#12]. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion to dismiss for lack of personal jurisdiction.

### Background

Kip Azzoni developed the idea of a personal digital assistant (PDA) case with a pocket slot or wallet in 2008. In 2009, she formed CardShark, LLC (CardShark) to commercialize her invention. CardShark is an entity formed under the laws of the state of New York with its principal place of business at Azzoni's residence in New York City. On November 1, 2011, the United States Patent and Trademark Office (PTO) issued Azzoni (formerly Kip Longinotti-Buitoni) a patent titled "Protective Covering for Personal Electronic Device" (U.S. Patent No. 8,047,364 or the '364 Patent).



*See* Compl. [#1-4] Ex. 3 (the '364 Patent). On February 26, 2013, the PTO issued Azzoni another patent, which is a continuation of the '364 Patent, U.S. Patent No. 8,381,904 (the '904 Patent). *See id.* [#1-3] Ex. 2 (the '904 Patent).

Catalyst Medium Four, Inc. (CM4) also produces cases for PDAs and iPhones. CM4 is a corporation organized and existing under the laws of the state of Texas with its principal place of business in Austin. On June 16, 2014, CM4 received a letter from CardShark's counsel (Brian Moriarty, located in Massachusetts) notifying CM4 of CardShark's patent rights via the '364 Patent and the '904 Patent (and other pending patent applications), and indicating CardShark's belief that CM4's product, the "Q Card Case for iPhone and Samsung," practices the invention claimed in the '904 Patent. *See id.* [#1-2] Ex. 1 (the Moriarty Letter). Moriarty told CM4 it will require a patent license from CardShark if it wished to continue marketing the product. *Id.* While Moriarty indicated CardShark sought to "amicably resolve this matter" and "avoid litigation," he noted "litigation will remain an option until this matter is resolved. My firm specializes in patent prosecution and patent litigation." *Id.* at 2.

Moriarty then proceeded to document two previous legal disputes CardShark had with other PDA case manufacturers. *Id.* The first involved CardShark initiating licensing negotiations with Case-Mate, Inc. before suing Case-Mate for patent infringement; ultimately, Case-Mate agreed to take a license from CardShark. *Id.* The second involved CardShark initiating licensing negotiations with Speculative Product Design, LLC (Speck); Speck also agreed to take a license without CardShark ever resorting to filing a lawsuit. *Id.* at 2–3.

Thereafter, Moriarty and a representative of the License Bureau, LLC, an Ohio company hired by CardShark to help negotiate the terms of a license, engaged in further communications with

CM4 regarding a potential license. *See* Mot. Dismiss [#10-1] Ex. 1 (Azzoni Decl.) ¶ 11. Apparently, these discussions did not result in CM4 agreeing to a license.

On November 7, 2014, CM4 filed the current declaratory judgment action, seeking a declaration of invalidity and non-infringement with respect to the '904 Patent and the '364 Patent. *See* Compl. [#1]. On February 2, 2015, CardShark filed a motion to dismiss for lack of personal jurisdiction and, in the alternative, motion to transfer for improper venue. CM4 responded and also moved for jurisdictional discovery. CardShark replied, and the motions are ripe for consideration.

## Analysis

CardShark's primary contention is CM4's failure to plead allegations supporting this Court's exercise of personal jurisdiction over CardShark.

### I. Jurisdictional Facts

In its jurisdictional allegations, CM4 asserts two grounds for the exercise of personal jurisdiction. First, CM4 argues "CardShark is doing business in this state because attempting to extract money from on-going businesses (like CM4) on patents it does not practice is the business of CardShark." *Id.* ¶ 6. In other words, CM4 points to the Moriarty Letter and the subsequent license negotiations between CardShark, CM4, and the License Bureau. Second, CM4 highlights CardShark's licensing agreements with at least two companies, Case-Mate and Speck, and the fact these companies sell their mobile phone wallets "in brick and mortar stores in Texas and on the internet." *Id.*

CardShark acknowledges it is engaged in the business of licensing its intellectual property, and it does not actually engage in any sales of any product it makes. Azzoni Decl. ¶ 8–9. CardShark has no business locations outside New York, and it owns no property in Texas. *Id.* ¶ 4. Moreover,

CardShark has no contracts with entities in Texas (other than the lawyer hired to defend this case), Azzoni has never visted Texas in any way (except one instance where she stopped in Dallas on a layover flight), and has never sold any products in Texas. *Id.* ¶¶ 4, 6, 9. CardShark maintains a passive website with links to social media, but there is no way to purchase any product on the website or through the social media links. *Id.* ¶ 10.

CardShark has license agreements with Case-Mate and Speck and no other companies. Case-Mate is a Georgia corporation with its principal place of business in Tucker, Georgia, and Speck is a California limited liability corporation with its principal place of business in Mountain View, California. *See* Mot. Dismiss [#10-1] Ex. 1 (Azzoni Decl.) ¶ 11. The license agreements are non-exclusive licenses providing for payment of royalty based upon sales. *Id.* ¶ 12. CardShark has no control over how Case-Mate or Speck market the products or where they sell the products. *Id.* CardShark does not manufacture the products sold by Case-Mate or Speck. *Id.*

The only contact CardShark has had with Texas has been its contact with CM4 through (1) the Moriarty Letter and (2) the subsequent communications between Moriarty, a representative of the License Bureau, and CM4 in an effort to negotiate the terms of a license for CM4. *Id.* ¶ 13. According to the declarations of Matt Altschul, CM4's president and CEO, and John B. Kelly, an attorney hired by CM4 after receipt of the Moriarty Letter, these subsequent communications include: (1) a response by CM4 to the Moriarty Letter on July 14, 2014; (2) a proposed Patent License Agreement by Moriarty on October 6, 2014; (3) a response by Kelly seeking clarification of the proposed agreement's terms on October 7, 2014; (4) a reply by Moriarty clarifying the terms on October 7, 2014; (5) a message by Moriarty on October 31, 2014, seeking an update on CM4's position; (6) an email by CM4 indicating it would have a counteroffer ready by mid-November; and

(7) an email by Moriarty stating CardShark expected a reply by the following week "so we can avoid filing a case." See Resp. [#11-3] Ex. A (Altschul Decl.) ¶ 15; id. [#11-5] Ex B (Kelly Decl.) ¶ 16. Moriarty copied Eric Hurwitz from the License Bureau on the October 31 message. See Kelly Decl. ¶ 5–6.

On November 7, 2014, CM4 filed its lawsuit. See Compl. [#1]. Between November 10 and 20, 2014, Scott Denko, an attorney hired by CM4 to file the lawsuit, exchanged emails with Moriarty regarding service of the lawsuit on CardShark. See id. [#11-11] Ex. C (Denko Decl.) ¶ 3. Since the filing of the lawsuit, Altschul and Hurwitz have exchanged phone calls and approximately ten emails discussing settlement and a potential licensing agreement. Altschul Decl. ¶ 21. The License Bureau appears to be an Ohio corporation hired by CardShark to negotiate its licenses. See Resp. [#11-20] Ex. 9 to Denko Decl. (printouts of the License Bureau's website showing an Ohio operating address); Azzoni Decl. ¶ 13 (recognizing CardShark's hiring of the License Bureau in Ohio to negotiate a license with CM4).

## II.   Legal Standard—Personal Jurisdiction

Personal jurisdiction is a question of law, and because CM4 brings the case pursuant to the patent laws, the Court applies Federal Circuit law in addressing the jurisdictional issue. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). Where there is no discovery or the district court does not hold an evidentiary hearing on the jurisdictional question and instead bases its decision on affidavits and other written materials, a plaintiff only needs to make a *prima facie* showing the defendant is subject to personal jurisdiction. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). On a motion to dismiss, "the district court

must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Redzewicz*, 471 U.S. 462, 471–76 (1985)). Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093. The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established minimum contacts in the forum state." *Burger King Corp.*, 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts" may give rise to either general or specific jurisdiction. General jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Autogenomics*, 566 F.3d at 1017 (internal quotation marks omitted). The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance*, 626 F.3d at 1231 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)). The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the

burden of proving the exercise of jurisdiction would be unreasonable under the third prong. *Elecs. For Imaging*, 340 F.3d at 1350.

In the declaratory judgment context, the claim arises out of or relates to the activities of the defendant patentee in enforcing the patents in suit. *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). "The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* at 1332–33 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

"In many declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an 'infringement letter,' and the patentee may have little contact with the forum beyond this letter." *Avocent*, 552 F.3d at 1333. In *Avocent*, the Federal Circuit summarized the court's treatment of "infringement" or "cease-and-desist" letters as they pertain to the exercise of personal jurisdiction:

> While such letters themselves might be expected to support an assertion of specific jurisdiction over the patentee because "the letters are 'purposefully directed' at the forum and the declaratory judgment action 'arises out of' the letters," *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003), we have held that, based on "policy considerations unique to the patent context," *id.* at 1206, "letters threatening suit for patent infringement sent to the alleged infringer *by themselves* 'do not suffice to create personal jurisdiction,'" *id.* at 1202 (quoting *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1359–60 (1998)) (emphasis added). This is "because to exercise jurisdiction in such a situation would not 'comport with fair play and substantial justice.'" *Id.* (quoting *Red Wing Shoe*, 148 F.3d at 1359–60). "Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone

would not comport with principles of fairness." *Red Wing Shoe*, 148 F.3d at 1360–61; *see also Silent Drive*, 326 F.3d at 1206. Thus, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." *Silent Drive*, 326 F.3d at 1202 (emphasis added); *see also Calder v. Jones*, 465 U.S. 783, 788 (1984) (noting that "[i]n judging minimum contacts, a court properly focuses on 'the relationship among *the defendant*, the forum, *and the litigation.*'" (emphases added) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, (1977)).

*Id.* at 1333–34 (citations altered).

The Federal Circuit has repeatedly addressed the question of what sort of conduct amounts to "other activities," which in some identifiable way "relate to" enforcement of the patents in the forum, and the court summarized its precedent on the issue in *Avocent*:

> While "the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed," *Akro*, 45 F.3d at 1547 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), and *Calder*, 465 U.S. 783), we have consistently required the defendant to have engaged in "other activities" that relate to the *enforcement* or the *defense of the validity* of the relevant patents. Examples of these "other activities" include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee whose "extra-judicial patent enforcement," namely, enlisting a third party to remove defendant's products from a trade show that was being held in the forum state, went beyond merely informing the defendant of its alleged infringement); *Breckenridge*, 444 F.3d at 1366 ("Here, in addition to sending letters into the forum state, . . . Metabolite has entered into an *exclusive license* with PamLab, a company . . . that conducts business in Florida." (emphasis added)); *Silent Drive*, 326 F.3d at 1202 (noting that "*[e]xclusive license agreements* with respect to the patents at issue with residents of the forum . . . have, at least in some circumstances, been held sufficient to confer personal jurisdiction" (emphasis added); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001) (finding jurisdiction over a patentee who had previously "granted [the plaintiff] *an exclusive license* to practice the inventions claimed in the [relevant] patents" (emphasis added); *Red Wing Shoe*, 148 F.3d at 1362 (noting that in *Akro*, "[i]n light of the patentee's substantial contacts with its *exclusive licensee*, this court determined that the patent was a sufficient nexus between the contacts and the cause of action to establish 'specific jurisdiction.'" (emphasis added)); *Genetic*

> *Implant Sys.*, 123 F.3d at 1458 (finding jurisdiction over a patentee who "contracted with [an *exclusive* distributor] to sell [the] patented products in [the forum State]" where the agreement was "*analogous to a grant of a patent license*" (emphasis added)); *Viam Corp. v. Iowa Exp.–Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996) (finding jurisdiction where "according to their own submission to this court, [the defendants] have initiated a *suit seeking to enforce the same patent* that is the subject of this suit against other parties, unrelated to this action, in the same district court" (emphasis added)); *Akro*, 45 F.3d at 1543, 1548–49 (finding jurisdiction over patentee who had *exclusively licensed* the plaintiff's local competitor to practice the relevant patent, where the license agreement also "oblige[d] [the patentee] '*to defend and pursue any infringement* against' the [relevant] patent" (emphasis added)).

*Id.* at 1334–35 (citations altered and footnote omitted).

In contrast to exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee, the defendant patentee's own commercialization activity does not reflect "other activities" supporting specific jurisdiction in a declaratory judgment action. *Id.* at 1335. "What the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because 'the federal patent laws do not create any affirmative right to make, use, or sell anything.'" *Id.* (quoting *Leatherman Tool Group Inc. v. Cooper Indus., Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997)). Therefore, a defendant patentee's sales, even of products covered by its own patents in the forum state, do not necessarily relate to the patentee's "amenability to specific personal jurisdiction in actions for declaratory judgment or non-infringement and invalidity of those patents." *Id.* at 1335–36 (collecting cases). Similarly, the "mere evidence of sales within the forum of products covered by the relevant patent(s) is insufficient to guarantee specific personal jurisdiction over the patentee." *Id.* at 1336 (citing *Breckenridge*, 444 F.3d at 1366 (noting specific jurisdiction is improper where the patentee "has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but . . . has no dealings with those licensees beyond the receipt of royalty income"); *Red Wing Shoe* (declining to find specific

personal jurisdiction over a patentee with thirty-four non-exclusive licensees selling the patented product in the forum State because "none of [the patentee's] licenses requires it to defend or pursue infringement actions involving the [relevant] patent, nor requires [the patentee] to be so nearly involved with its licensees as was the case with the exclusive licensee in *Akro*")).

### III. Application

#### A. Specific Jurisdiction.

Application of Federal Circuit precedent to the circumstances of this case makes clear CardShark is not subject to specific personal jurisdiction in Texas. CM4's jurisdictional allegations are based solely on (1) the Moriarty Letter, (2) the subsequent licensing negotiations, and (3) CardShark's license agreements with Case-Mate and Speck who both sell their products in Texas. CardShark acknowledges these contacts, so they are undisputed. With respect to the Moriarty Letter, it alone is insufficient to create personal jurisdiction. Similarly, the subsequent licensing negotiations are simply commercialization efforts, which do not constitute the sort of "other activities" needed in addition to the letter to support the exercise of personal jurisdiction.

Concerning the license agreements, Azzoni's declaration provides they are both non-exclusive, and CardShark has no control over how or where the licensee's sales take place. CardShark's only dealing with those licenses is the receipt of royalties. Moreover, neither Case-Mate nor Speck are incorporated in Texas or have their principal place of business in Texas. CM4 does not contradict this evidence. Federal Circuit case law has repeatedly held non-exclusive licenses are not sufficient "other activities" for specific personal jurisdiction.

CM4 focuses on distinguishing the current case from *Red Wing*. Yet CardShark persuasively compares the two and shows why *Red Wing*'s holding directs this Court to find no specific personal

jurisdiction. Mot. Dismiss [#10] at 7–8. CM4 contends the letters in *Red Wing* were "civil invitations to a discussion," where "[l]itigation was not remotely mentioned," but the Moriarty Letter, in contrast, explicitly threatened litigation. Resp. [#11] at 2–3. Even assuming CM4 is correct about the nature of the Moriarty Letter, the distinction CM4 highlights has no significance in Federal Circuit precedent. *See, e.g., Silent Drive*, 326 F.3d at 1202 ("*[L]etters threatening suit for patent infringement* sent to the alleged infringer by themselves 'do not suffice to create personal jurisdiction.'" (quoting *Red Wing Shoe*, 148 F.3d at 1359–60) (emphasis added)).

CM4 also suggests *Red Wing* is outdated and was decided before patent assertion entities (PAEs) or patent "trolls" became a major problem for patent litigation. Resp. [#11] at 3–4. Since the *Red Wing* decision in 1998, the Federal Circuit has repeatedly cited it favorably for the proposition ordinary cease-and-desist letters are insufficient to subject the patentee to specific jurisdiction. *See, e.g., Radio Sys. Corp. v. Assession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (citing *Red Wing*, 148 F.3d at 1360–61). The Federal Circuit has had ample opportunity to clarify its interpretation of *Red Wing* or overturn it, and has not done so. CM4 cannot escape this precedent. With no case law to support its position, CM4 mostly resorts to policy reasons and attorney argument for why personal jurisdiction is proper in this case. The Court's focus is on precedent, and the precedent leaves no doubt in this case.

CM4 has presented no allegation or fact indicating CardShark has engaged in activities relating to the enforcement or the defense of the validity of the '904 or the '364 Patent in Texas, and as a result, specific personal jurisdiction does not exist on its complaint.

B.   **General Jurisdiction and CM4's Motion for Jurisdictional Discovery**

CM4's jurisdictional allegations in its complaint provide no basis for finding CardShark has the sort of "continuous and systematic" contacts with Texas to confer general personal jurisdiction. Moreover, Azzoni's declaration establishes CardShark's contacts with Texas are limited to those with CM4 already analyzed above and are not "continuous and systematic." There is no support for a finding of general jurisdiction.

CM4 does not even argue its allegations support the exercise of general jurisdiction over CardShark, but in its response, CM4 does raise some new possible theories for general jurisdiction on which it bases its request for discovery. First, CM4 raises questions about the License Bureau, its ownership, and its activities. Resp. [#11] at 16–17. Second, CM4 suggests CardShark is Azzoni's alter ego, and if so, the Court should examine Azzoni's actions "in other spheres of her life." *Id.* at 17. According to CM4, "[t]he actions of the License Bureau or Ms. Azzoni may reveal a basis for general jurisdiction over CardShark in addition to further enhancing specific personal jurisdiction and the 'something more' already shown in this case over the facts of *Red Wing*." *Id.* at 17–18. Specifically, CM4 requests discovery by deposition to determine: "(1) the nature of CardShark and its business; (2) the true equitable or legal owners of CardShark and the patents; and (3) . . . based upon who are the true owners, discovery by deposition of such true owners as to the nature of their business as it relates to the patents or CM4 and the extent to which any such true owners have had contacts with Texas." *Id.* at 18.

The Court need not permit discovery on matters of personal jurisdiction unless the motion to dismiss raises issues of fact. *See Kelly v. Syria Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.

2000) (internal quotation marks omitted). When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be allowed. *Id.*

The Court fails to see how jurisdictional discovery would be relevant or helpful. First, with respect to CM4's jurisdictional allegations actually included in the complaint, there are no factual disputes. There is no factual dispute (1) CardShark sent the Moriarty Letter, (2) CardShark, CM4, and the License Bureau engaged in license negotiations, and (3) CardShark has non-exclusive license agreements with two companies, Case-Mate and Speck, who sell their products in Texas. For reasons already explained, these allegations do not support specific or general jurisdiction.

Second, with respect to CM4's jurisdictional theories not asserted in its complaint, there is no basis for further discovery. CardShark has acknowledged they hired the License Bureau, an Ohio company, as a third-party independent contractor to help negotiate a license with CM4. This activity falls within commercialization efforts, which are not "other activities" for the purposes of specific jurisdiction. To the extent CM4 seeks to discover if the License Bureau has systematic and continuous contacts with Texas, which would then supposedly support general jurisdiction over CM4 because it hired the License Bureau, CM4 cites no legal support for such a proposition. CM4's other theory premised on an alleged alter ego relationship between CardShark and Azzoni similarly has no merit. Whether CardShark is Azzoni's alter ego is immaterial because neither CardShark nor Azzoni have the sort of "systematic and continuous" contacts to support general jurisdiction.

In sum, there are no factual disputes jurisdictional discovery would resolve. CM4 wants to determine (1) the nature of CardShark and its business, (2) the "true" owners of CardShark and the patents, and (3) if the "true" owners have had contacts with Texas. The record already contains the answers. First, CardShark is in the business of obtaining licenses for its two patents related to PDA

cases and wallets. Second, Azzoni is the owner and sole employee of CardShark, which she operates out of her residence. Third, Azzoni and CardShark do not have contacts with Texas supporting either specific or general personal jurisdiction. CM4's request for jurisdictional discovery in the hopes it might, with any luck, reveal jurisdiction is a textbook fishing expedition with no basis in the current record or even its own allegations. Because jurisdictional discovery would serve no benefit, the Court denies CM4's motion.

## Conclusion

Federal Circuit precedent directly controls this case, and CM4's jurisdictional allegations simply do not provide a basis for the exercise of personal jurisdiction over CardShark. Therefore, the Court GRANTS CardShark's motion to dismiss for lack of personal jurisdiction and DISMISSES AS MOOT the motion to transfer for improper venue. Furthermore, jurisdictional discovery will not cure the issue, and the Court DENIES CM4's motion for jurisdictional discovery.

Accordingly,

IT IS ORDERED that Defendant Cardshark, LLC's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3) and, in the alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) [#10] is GRANTED IN PART and DISMISSED IN PART, as described in this order;

IT IS FURTHER ORDERED that Plaintiff Catalyst Medium Four, Inc.'s Motion for Jurisdictional Discovery [#11] is DENIED;

IT IS FINALLY ORDERED that Plaintiff Catalyst Medium Four's claims against Defendant Cardshark, LLC are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

SIGNED this the 26th day of March 2015.

SAM SPARKS
UNITED STATES DISTRICT JUDGE